IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| McKINLEY AL GREEN, ) | Civil Action No. 4:04-cv-21779-HFF-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| K.P. NOVAL, ADMINISTRATOR OF ) | |
| CHARLESTON COUNTY ) | |
| DETENTION CENTER, AND J. AL ) | |
| CANNON JR., SHERIFF OF ) | |
| CHARLESTON COUNTY, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, McKinley Al Green, filed this action on August 27, 2004, alleging violations of his constitutional rights.[1] During the time of the matters alleged in his complaint, plaintiff was housed at the Charleston County Detention Center ("CCDC"). On February 28, 2005, the defendants filed a motion for summary judgment with a memorandum in support of that motion. Because plaintiff is proceeding pro se, he was advised on or about March 2, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. The plaintiff filed a response on March 30, 2005. (Document #17).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges unconstitutional overcrowding, inadequate food, insufficient cleanliness, charging inflated canteen prices, denial of legal materials and/or adequate law library, inadequate clothing, failure to furnish detainees with certain medical treatment, and delay of cell checks. Plaintiff requests that the Court order the CCDC to allow detainees access to a law library with a law clerk, uphold detainees right to practice their religion without hindrance, order a back-up system in case the water is ever contaminated, ensure that detainees remain in a healthy environment and order that showers, tables, telephones, and chairs be cleaned daily, and to correct the failure that is presently in place as qualified medical personnel and proper standards. Plaintiff further requests the following relief from the court: to order that sick call be held once a day; to reduce prices of canteen items; to compel CCDC to issue envelopes, paper, and pencils to indigent detainees; to order CCDC to issue coats and shoes to detainees; to send inspectors to the CCDC; to order officers to do a room check every thirty minutes; to install a library; to post menus; and, requests one million dollars. (Complaint).

Defendants filed a motion for summary judgment in which they argue that plaintiff's claim regrading denial of legal materials should be dismissed in that petitioner has not shown actual injury, nor pointed to any claim which he has not been allowed to pursue. With regard to adequacy of nutrition, defendants argue that the claim must fail in that plaintiff has not shown that he is in real danger of having his health affected, or that it has, in fact been affected. As to overcrowding and living conditions, defendants argue that plaintiff has not shown that officials acted with deliberate indifference or that conditions are objectively serious. As to the remaining complaints, defendants assert that plaintiff has stated claims in general and not claims personal to him. Lastly, defendants

argue that they are entitled to qualified immunity and that Sheriff Cannon and Chief Novak are not liable as supervisory officials.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the

Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

4

## D.  CONDITIONS OF CONFINEMENT

As previously stated, plaintiff alleges that the CCDC is overcrowded which results in detainees receiving inadequate food portions and unhealthy food, insufficient cleanliness, exposure to other inmates with crabs/lice, and insufficient clothing.

Defendants argue in their memorandum in support of the motion for summary judgment that plaintiff has not shown any expressed intent on the part of the defendant to punish him and that plaintiff is provided with all the basic necessities. In addition, defendants argue that some of plaintiff's allegations are pleaded generally, with no specific allegations of harm to him personally. Defendants argue that plaintiff has not alleged in his complaint that he was injured as a result of the allegations or that he is in danger of having his health affected, or that he has, in fact, been affected. Additionally, defendants argue that plaintiff has not shown that the conditions are objectively serious to rise to the level of an Eighth Amendment violation and that plaintiff has not shown deliberate indifference as to his conditions of confinement.

Plaintiff filed a response to the motion for summary judgment arguing that because the "units" are so overcrowded that  "pre-trial detainees have been beaten bloody, are constantly being extorted out of food and other personal items. Because we live in fear daily because we know that by the time enough officers get out rescue [sic] the damage will have already been done and this all stems from this place being overcrowded." (Response, p. 3). Plaintiff asserts that two detainees have been placed within disciplinary segregation in the same cell that is designed for one inmate. Plaintiff alleges that there is a delay in cell checks as a result of the overcrowding. Furthermore, plaintiff alleges that there is inadequate clothing and that most detainees plead guilty because of being deprived clothing. Because of overcrowding, plaintiff alleges that they receive unhealthy food in that they are "served soybean

5

products at least daily and at times all 3 meals. It has been medically proven that over consumption of soybean can cause one to become sterile." (Response, p. 4).

A review of the complaint reveals that the plaintiff has failed to allege any significant injury resulting from the alleged conditions. Specifically, the plaintiff does not present any evidence that he suffered any injury resulting from the allegations that the jail was overcrowded. Plaintiff makes bald allegations that he has suffered mentally[2], that he feared that his life was in danger due to the lack of security as a result of the overcrowding, and that the diet was inadequate. These allegations are insufficient to survive summary judgment. Furthermore, while plaintiff alleges inadequate medical care, he has not presented any evidence that any medical condition has been neglected or that there was deliberate indifference to a serious medical need.

Although an issue of fact may exist as to overcrowding at CCDC, plaintiff has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. Plaintiff has failed to show that he has suffered any significant injury as a result of the conditions alleged as a result of any overcrowding. Plaintiff has not produced any expert testimony or medical records that show he suffered with or sustained any permanent or significant injury. Therefore, plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendant. Strickler, supra  Further, the plaintiff has failed

---

[2] Plaintiff cannot recover damages for emotional distress. Case law prior to the Prison Litigation Reform Act had held that there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish in prison, and hence, there is no liability under § 1983 regarding such claims. See Grand Staff v. City of Borger, 767 F.2d 161 (5th Cir. 1989). The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997). As the plaintiff has not provided evidence of any physical injury, he is not entitled to recover for mental anguish or emotional distress under 42 U. S. C. § 1983. Therefore, his claims for emotional distress should be dismissed.

to show any express intent on the part of the defendants to punish him.

Plaintiff has made allegations in his complaint that he is of the Islamic faith and has been requesting that he not be subjected to pork products being placed on his tray. Plaintiff states that he received a response to his request from the Chaplin who stated that pork products are not served at the CCDC. However, plaintiff contends that once a week prisoners are served with macaroni or beans with diced ham. Plaintiff alleges that he filed a grievance but has not been notified of a response. Thus, it appears that plaintiff has not exhausted this issue.[3]

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the prison and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

---

[3] Inmates may be entitled to a pork-free diet in conformance with religious beliefs, Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973), although special diet need not be provided if inmate can voluntarily refrain from eating pork and maintain an adequate diet. Abernathy v. Cunningham, 393 F.2d 775, 778 (4th cir. 1968).

The Complaint in this case also fails to state a cause of action under 42 U.S.C. § 1983 based on Plaintiff's contentions that his constitutional rights are being violated by the allegedly improper operation of the inmate grievance system used by the CCDC. It is well settled that prison inmates, including pre-trial detainees, do not have a federal constitutional right to have *any* inmate grievance system at the place where they are incarcerated. See, Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees covered by that system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). As a result, even if corrections officials fail to properly apply an inmate grievance procedure, as Plaintiff contends is the case at CCDC, such failure is not actionable under section 1983. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11 (N.D.Ill.1982).

Based on the reasons discussed above, the undersigned recommends that summary judgment for the defendants be granted.

This Court is required to construe pro se complaints and petitions liberally. Such pro se complaints and petitions are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). However, even under this less stringent standard, the Complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted. The requirement of liberal construction does not mean that the court can

ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Social Svcs., 901 F.2d 387 (4th Cir. 1990).

Additionally, the inmate must show more than de minimis pain or injury. Id. at 9. Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Plaintiff has not shown more than de minimis pain or injury. Specifically, the plaintiff does not present any evidence that he suffered any injury resulting from the allegations that the CCDC is/was overcrowded or due to the allegations of insufficient amounts of food, cleanliness issue, and insufficient clothing. Plaintiff has made no allegations that the defendants intended to punish him. His bald allegations are insufficient to survive summary judgment. Therefore, it is recommended that summary judgment be granted with respect to the above issues complaining of conditions of confinement.[4]

### E. LEGAL MATERIALS

In his complaint, plaintiff argues that he was denied immediate access to legal materials and an adequate law library.

---

[4] In his complaint, plaintiff made allegations that he has not alleged impacted him personally. For example, plaintiff makes allegations that a detainee, Robert Hall, was wrongfully punished for talking back to an officer that was using profanity at him and was murdered in disciplinary segregation and allegations, in his reply, that two inmates within disciplinary segregation were placed in a cell that was meant for one person. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by the Constitution of federal law. Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. Allen v. Wright, 468 U.S. 737, 751 (1984). Therefore, as plaintiff does not have standing to bring these allegations, the undersigned will not discuss these issues.

Generally, states must affirmatively provide prisoners with either law libraries or persons trained in law to prosecute both post-conviction proceedings and civil rights actions. Bounds v. Smith, 430 U.S. 817 (1977); Carter v. Mandel, 573 F.2d 172 (4th Cir. 1978). However, meaningful access to the courts is the touchstone. As well, Bounds, 430 U.S. at 823, did not create an abstract, free-standing right to a law library or legal assistance. To prevail, an inmate must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. The right to access underlying Bounds is narrow. It only extends to suits attacking sentences and challenging conditions of confinement and does not require that the state enable the prisoner to discover grievances or to litigate effectively in court. Lewis v. Casey, 518 U.S.343 (1996). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Id.

The defendants argue that in order to state a claim for the violation of his constitutional right of access to the courts, it is a basic requirement that a prisoner must identify an actual injury resulting from official conduct. Lewis v. Casey, supra. Defendants argue that plaintiff cannot show actual injury, nor point to any claim which he has not been allowed to pursue.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged.

In this case, the plaintiff has failed to allege any actual injury by not having direct access to the law library. In his response, plaintiff alleges that such denial of the liaison to provide him with books/statutes that he requested causes him to not be able to properly challenge the conditions of his confinement. Plaintiff does not allege that he was not able to file a §1983 claim and, as well, plaintiff

10

has responded to the motion for summary judgment citing case law. In the case <u>Trotman v. York County Detention Center</u>, 2003 WL 23198860 (D.S.C.)), the Court held the following:

> Plaintiff's (a pretrial detainee) allegations relating to the lack of access to a comprehensive law library at the York County Detention Center do not raise a cognizable section 1983 claim. Longstanding case law in this circuit provides that if a pre-trial detainee has an attorney--or *is offered counsel but waives his or her right to counsel*--he or she has no constitutional right of access to a law library or to legal materials when he or she is a pre-trial detainee. *See United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir.1978). In *United States v. Chatman,* the Court concluded that *Bounds v.. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), was not applicable to a pre-trial detainee:
>
>> We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. * * * *Bounds,* of course, has no direct application to defendant. He was accused of a crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered the defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8 Cir.1977).
>
> *United States v. Chatman,* 584 F.2d at 1360 (italics in original). *Cf. Lewis v. Casey,* 64 U.S.L.W. 4587, 135 L.Ed.2d 606, 116 S.Ct. 2174 (1996).
>
> The United States Court of Appeals for the Fourth Circuit has also ruled that the Constitution of the United States does not require every local jail to even have a law library. *See Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987). The holding in *Magee v. Waters* is based on the knowledge that county jails are generally short-term facilities, wherein " 'the brevity of confinement does not permit sufficient time for

11

>prisoners to petition the courts." ' *Magee v. Waters,* 810 F.2d at 452. *See also Cruz v. Hauck,* 515 F.2d 322, 331-333 (5th Cir.1975), *cert. denied, Andrade v. Hauck,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In *Cruz v. Hauck,* the Court noted: "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of *the State."* 515 F.2d at 331 (emphasis added). Also on point are *Peterkin v. Jeffes,* 855 F.2d 1021, 1040-41 & nn. 24-25 (3d Cir.1988); and *Sands v. Lewis,* 886 F.2d 1166, 1170-71 (9th Cir.1989)(collecting cases). In any event, the obligation to provide legal assistance to Plaintiff rests with the State of South Carolina, *not* with the named Defendants in the above-captioned case.

In this case, plaintiff has failed to submit any objective evidence showing any actual injury arising out of the failure of these defendants to provide him with law books and/or legal materials that denied him access to court. The plaintiff claims that he did not have access to the legal research to the degree he desired. However, he cannot show that his failure to obtain that legal research in the manner he wishes resulted in any actual detriment to his case. Further, the grievance form that plaintiff submitted shows that the response states "Then it is best that you contact your attorney or the liaison Ms. Ashley Dell, here at the detention center." (Plaintiff's exhibit).  Therefore, as the court held in Trotman[5], supra, the grievance form which plaintiff submitted shows that responsible authorities did respond to plaintiff's inquiry and told him that he needed to contact his attorney. This indicates that plaintiff was informed of alternate sources for the information he sought, that he does have an attorney in his criminal case, and that his grievance was responded to by jail officials. Therefore, based on case law and facts alleged as set out above, the undersigned finds that the plaintiff's constitutional rights have not been violated. Thus, it is recommended that summary judgment be granted on this issue in

---

[5]This court may take judicial notice of this case. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970).  *See also* <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239, 1989 U.S.App. LEXIS® 16328 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

favor of the defendants.

## F. RESPONDEAT SUPERIOR

The defendants assert that the Sheriff of Charleston County, J. Al Cannon, and Chief Novak cannot be held liable as a supervisory official in that plaintiff has not alleged any individual involvement by Sheriff Cannon or Chief Novak with respect to any of the problems about which he complains.

In his response, plaintiff argues that Sheriff Al Cannon and Chief Novak should be held responsible because they allow pork products to be served and that CCDC has a vegetarian diet and Jewish diet but no Islamic diet. Further, plaintiff argues that Sheriff Cannon made a statement to the press that the cells in Disciplinary Segregation are for one person in each cell but they place two inmates within the cell. Plaintiff asserts that Chief Novak allows the prices of canteen items to increase and that both Sheriff Cannon and Chief Novak are aware of the risk of having overcrowding at the CCDC. Additionally, plaintiff argues that both Chief Novak and Sheriff Cannon authorize the recreation schedule.

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). Plaintiff has failed to meet this burden in that he has failed to show that

13

defendants were responsible for a policy or custom that resulted in illegal action or that they have been deliberately indifferent to the needs of plaintiff.

## G.  QUALIFIED IMMUNITY

Defendants assert that dismissal of all claims is appropriate based upon the qualified immunity of the defendants.

Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right

14

> allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F.

15

2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendant (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

### III.  PLAINTIFF'S MOTIONS FOR "PROTECTIVE ORDERS"

Plaintiff has filed three motions for "protective orders." (Documents #7, 11, and 13). In the first

motion for protective order, plaintiff requests "an order of protection from all the employees at the Charleston County Detention Center being that I have initiated a Civil Action against their supervisors." (Document #7). Plaintiff filed a second motion for protective order (Document #11) in which he requests an order of protection from the defendants and asking that copies of each document he had submitted to the courts be forwarded to him in that his copies were missing.[6] Plaintiff has filed a third motion for protective order with this Court requesting an Order of Protection stating that since October of 2004 all his outgoing mail was not reaching its destination. Further, plaintiff requests a transfer to another detention center. (Document #13).[7]  Even though plaintiff has styled these as motions for protective order it appears that plaintiff is requesting a restraining order or injunctive relief. In plaintiff's requests, plaintiff did not allege that he was in imminent danger or that he had been threatened by the employees at the CCDC.

The court should consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff' likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if the interim relief is denied; (c) the injury to defendants if an injunction is issued; and (d) the public interest.

North Carolina State Ports Authority, supra.   See also Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977); Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119 (4th Cir. 1977). However, preliminary relief directed to running a state prison should be granted only

---

[6] The Clerk of Court has forwarded to plaintiff copies of all documents he has submitted in this case. See docket sheet for this case, staff notes of June 8, 2005. Plaintiff has also requested that this court send him copies of Local Rules and Federal Rules of Civil Procedure. This request is denied.

[7] Further, to state a claim based on delay or nondelivery of legal mail, plaintiff must allege adverse consequences as the basis for the allegation that the delay or nondelivery deprived him of meaningful access to the courts. White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Plaintiff has failed in this regard.

in compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994).

The two most important factors are probable irreparable injury to the plaintiff if the relief is not granted and the likelihood of harm to the defendants if the injunction is granted. North Carolina State Ports Authority v. Dart Containerline Co., Ltd., at 750.

Plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Additionally, as noted above, the courts are directed to leave prison administration to the discretion of those best suited to running the prisons. Granting plaintiff injunctive relief would have the effect of allowing a prisoner to "approve" actions taken by the prison administration that might have an impact on them, because any attempt to require his compliance might be construed (by any of the parties) as a violation of the order. Importantly, the plaintiff has not shown or provided any evidence that he is currently subject to a real and immediate threat of physical harm. See Los Angeles v. Lyons, 461 U.S. 95 (1983). In addition, plaintiff has failed to show a likelihood of success on the merits. Therefore, the undersigned recommends that plaintiff's motions for injunctive relief/restraining orders (document #7, 11, 13) be DENIED. Further, as to plaintiff's request for a transfer, it is recommended that this portion of his motion (document #13) also be DENIED in that a prisoner has no due process right to be housed in any particular facility. Meachum v. Fano, 427 U.S. 215, 223-224 (1976).

## IV. CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #14) for summary judgment be GRANTED IN ITS ENTIRETY.

It is FURTHER RECOMMENDED that plaintiff's motions for "protective orders" (Documents #7, 11, 13) be DENIED.

    Respectfully Submitted,

    s/Thomas E. Rogers, III
    Thomas E. Rogers, III
    United States Magistrate Judge

June 20, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & 
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, *supra*; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk<br>
United States District Court<br>
Post Office Box 2317<br>
Florence, South Carolina  29503